IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

K.B., BY HER MOTHER, SAKIA HALL AS
NEXT FRIEND and SAKIA HALL,

    Plaintiff,

v.                              Case No. 3:11-cv-00065-JRS

HAROLD FORD,

    Defendant.

## HAROLD FORD'S BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGEMENT

### I. INTRODUCTION

This action arises out of a brief incident at Fairfield Court Elementary School in Richmond, Virginia on March 23, 2010. A third grade teacher, Karenna Edwards-Carter, had a class that was misbehaving, and she called the assistant principal, Ellena Ebanks ("Ebanks") for assistance in talking with the class. On the way to the class, Ebanks saw Harold Ford ("Ford"), a Richmond City police officer, in the hall and asked him to walk with her to the class. After Ebanks began talking to the class about their behavior, the class settled down, with the exception of a student with a history of behavior problems, K.B. K.B. began pushing her desk back and forth, and became outspoken and unruly. After Ebanks asked Ford if he would make some comments to the class, K.B. continued to interrupt with her disruptive behavior. As a result, Ford respectfully asked K.B. to express herself outside the classroom, and she left the class with Ford and Ebanks.

In the hallway, K.B. continued to act out. Looking for a quieter place to deal with K.B., Ford opened a door to the outside. K.B. attempted to run away from the school. When Ford attempted to keep K.B. from running away, she resisted, swinging her arms and striking Ford. Ford asked K.B. to stop and calm down, and warned that he would have to handcuff her if she did not.

1

Instead of calming down, K.B. continued to fight. At that point, Ford briefly placed handcuffs on K.B., and put her in his police vehicle for his and K.B.'s safety. As soon as K.B. calmed down, Ford took off the handcuffs and brought K.B. back to school to see her counselor. After meeting with the counselor, K.B. returned to her classroom and was well-behaved for the rest of the day. She was unharmed and received no medical attention at any time.

As a result of this minor incident, plaintiff claims that K.B. has a cause of action. Plaintiff has filed a civil action invoking this court's jurisdiction under 42 *U.S.C.* § 1983, and asserting four counts: for "Custody"(Count 1); for excessive force (Count 2); for assault under Virginia common law (Count 3) and for false imprisonment under Virginia common law (Count 4).[1] The record reveals, however, that Ford acted reasonably and lawfully, and as a reasonable officer would have acted under the circumstances. There is no genuine issue of material fact to prevent summary judgment in Officer Ford's favor.[2]

---

[1] Sakia Hall ("Hall") is also listed as a plaintiff and asserts that she has a claim for "necessary expense." There is no evidence, however, that Hall has incurred any expenses (medical or otherwise) associated with K.B.'s alleged claims. Moreover, because K.B.'s claims are subject to summary judgment, Hall's claim must also be dismissed on summary judgment.

[2] Plaintiff alleges that Ford is sued in his "individual and official capacities." (Complaint, ¶ 5). An official capacity suit, however, is the equivalent to a suit against the entity itself, in this case the City of Richmond. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). It is well settled that there is no respondeat superior liability under 42 U.S.C. § 1983. Instead, in order to impose liability on a municipality, plaintiff must adequately plead the existence of an official policy or custom that is fairly attributable to the municipality that proximately caused the deprivation of her rights. *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978). Because the plaintiff has not done so, and there is no evidence to support such a claim, plaintiff's official capacity claim should be dismissed.

The same is true with respect to plaintiff's state law claims. The City of Richmond is entitled to sovereign immunity from these claims because they arise out of the maintenance of a police force. *Niese v. City of Alexandria*, 264 Va. 230, 239-240, 564 S.E.2d 127 (2002) (holding that maintaining a police force is a government function entitling the City to immunity for claims arising out of a police officer's alleged negligence and alleged intentional torts). Accordingly, these claims should be dismissed as well.

## II. LOCAL RULE 56(B) LISTING OF UNDISPUTED MATERIAL FACTS

1. Defendant Harold Ford ("Ford") at all times relevant to this lawsuit was and is a City of Richmond police officer. (Affidavit, paragraph 1.)

2. On March 3, 2010, Ford was on duty, in full uniform and with his badge visible at the time and place of the incident upon which this case is based. (Affidavit, paragraph 2.)

3. Ellena Ebanks ("Ebanks") has been employed by the Richmond Public Schools for 28 years and was the Assistant Principal for Fairfield Court Elementary School. (Banks, p. 3). Karenna Edwards-Carter ("Edwards-Carter") was the third grade teacher at Fairfield Court Elementary School. K.B. was a student in her class. (Carter, p. 4; Ebanks, p. 3).

4. Each undisputed fact listed below refers to events occurring in the course of the incident at Fairfield Court Elementary School ("Fairfield Court") on March 23, 2010.

5. The minor Plaintiff, K.B., was a student at Fairfield Court.

6. Edwards-Carter was having trouble with her class misbehaving and being disruptive. As a result, she asked administration to talk with the class. (Carter, p. 5-6; Ebanks, p. 4).

7. Ebanks responded to this request. While she was on the way to Edwards-Carter's class, she met Ford in the hall and asked Ford to accompany her to the classroom. (Ebanks, p. 4).

8. When Ebanks and Ford arrived in the classroom and spoke with the class, the class settled down, with the exception of K.B. (Carter, p. 6-7; Ebanks, p. 6).

9. K.B. is prone to temper tantrums. (Hall, pp. 24; 25).

10. K.B. has been diagnosed with ADHD, and at the time of the incident was on medication and receiving counseling. (Hall, pp. 20; 28; 31).

11. K.B. is known at the school to have behavior problems. (Ebanks, p. 5).

12. While Ebanks and Ford spoke with the class, K.B. continued misbehaving and became outspoken and unruly. (Carter, p. 6; Ebanks, pp. 6-7; Affidavit, paragraphs 5 and 6).

3

13. Ford attempted to control the situation by asking K.B. to express herself outside of the classroom. K.B. left the classroom and moved into the hallway with Ford. (Edwards-Carter, p. 7; Ebanks, p. 7; Affidavit, paragraph 7).

14. Once in the hallway, K.B. continued to act out, causing Ford to look for a quieter place to deal with her. (Affidavit, paragraphs 8, 9, 10).

15. Ford and K.B. proceeded to an outside door at the front of the building, and as they stepped outside, K.B. tried to run away from the school. (Affidavit, paragraphs 10 and 11; K.B., p. 12).

16. Ford grabbed K.B.'s arms to prevent her from running away, and she tried to get away from him by swinging her arms. (Affidavit, paragraph 12; K.B., p. 13). Ford's perception was that K.B. also tried to bite him. (Affidavit, paragraph 13).

17. Ford perceived K.B.'s actions as not only an attempt to escape, but as an assault on his person. (Affidavit, paragraphs 13, 14, 15).

18. Ford asked K.B. to stop, calm down and relax or he (Ford) would have to handcuff her (K.B.) ("You need to stop or I'm going to have to put the cuffs on you."). ( K.B., p. 14; Affidavit, paragraph 14).

19. After the warning, K.B. continued to try to get away, by fighting Ford. As a result, Ford briefly put handcuffs on K.B. in order to keep her from hitting him, hurting herself or running away. (Affidavit, paragraphs 13, 14, 15; K.B., p.14).

20. After handcuffing K.B., K.B. continued to fight, so Ford put her in his patrol car with the air conditioning on and asked her to calm down. (Affidavit, paragraphs 16, 18; K.B., 14). When K.B. began to calm down, she asked to speak to her counselor, Ms. Jefferson. (Affidavit, paragraphs 19, 20).

21. As soon as K.B. calmed down, Ford removed the handcuffs and took her back inside the school to see her counselor. (K.B., p. 15; Affidavit, paragraphs 19, 20, 21).

22. K.B. was calm and well-behaved after returning to the classroom. (Edwards-Carter, pp. 7, 8).

23. K.B. has never received any medical attention of any sort whatever in consequence of the incident. (Hall, p. 45).

## III. STANDARDS ON SUMMARY JUDGMENT

Summary judgment is to be entered when the moving party shows that there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. *Fed. R. Civ. P.* 56. The summary judgment inquiry scrutinizes the plaintiff's case to determine whether the plaintiff has proffered sufficient proof, in the form of admissible evidence that could carry the burden of proof of her claim at trial. *Mitchell v. Data General Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993). The Supreme Court has made it clear that trial judges "*shall*...grant summary judgment if there is no genuine issue as to any material fact and if the moving party is entitled to summary judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986) (emphasis supplied).

The plaintiff, as the party opposing the motion, has the ultimate burden of demonstrating an issue of material fact for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Conclusory or speculative allegations will not suffice, nor will a mere scintilla of evidence in support of her case. *Thompson v. Potomac Electric Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002). The nonmoving party cannot create a genuine issue of material fact through mere speculation or the building of one inference on another. *Beale v. Hardy*, 769 F.2d 213 (4th Cir. 1985). Only reasonable inferences need be considered by the court. *Sylvia Development Co. v. Calvert County,*

5

*Maryland*, 48 F.3d 810, 818 (4th Cir. 1995). Whether an inference is reasonable cannot be decided in a vacuum, it must be considered in light of the competing inferences to the contrary. *Id.*

As a result, the non-moving party must produce more than a scintilla of evidence, such that reasonable jurors could find by the preponderance of evidence for the non-movant. This is because an apparent dispute is not genuine within the contemplation of the summary judgment rule unless the non-movant's version is supported by sufficient evidence to permit a reasonable jury to find the facts in her favor. Thus, if the evidence is merely colorable or not sufficiently probative, a motion for summary judgment may be granted. *Id.*

## IV. STANDARDS ON QUALIFIED IMMUNITY

Ford is entitled to qualified immunity for his actions, because they were reasonable under the circumstances. The purpose in granting qualified immunity to government officials such as Ford is to shield government officials performing their duties from the burdens of trial and the threat of monetary liability. *Harlow v. Fitzgerald*, 457 U.S. 800 (1982). For policy reasons, qualified immunity protects all but the plainly incompetent or those who knowingly violate the law. *Malley v. Briggs*, 475 U.S. 335 (1986). Accordingly, government officials forfeit this defense only when a reasonable official would have known that an action violated clearly established constitutional rights. *Harlow*, 457 U.S. at 818; *Winfield v. Bass*, 106 F.3d 525, 530 (4th Cir. 1997).

Importantly, because qualified immunity is immunity from suit, and not merely a defense to liability, courts must scrutinize and dismiss appropriate cases on qualified immunity grounds early in the litigation. *Sigman v. Town of Chapel Hill*, 161 F.3d 782 (4th Cir. 1998), *citing Mitchell v. Forsyth*, 472 U.S. 511 (1985). The applicability of qualified immunity should ordinarily be resolved at the summary judgment stage. *See, Willingham v. Crooke*, 412 F.3d 553, 558 (4th Cir. 2005).

Qualified immunity provides a safe harbor from tort damages for police officers performing objectively reasonable actions in furtherance of their duties. *Porterfield v. Lott*, 156 F.3d 563, 568

(4th Cir. 1998). **The safe harbor ensures that officers will not be liable for bad guesses in gray areas but only for transgressing bright lines.** *Maciarello v. Sumner,* 973 F.2d 295, 298 (4th Cir. 1992). **Simply put, qualified immunity exists to protect those officers who reasonably believe that their actions do not violate federal law.** *Doe v. Broderick,* 225 F.3d 440, 453 (4th Cir. 2000).

## V. AUTHORITY AND ARGUMENT

The undisputed facts in this case show that Ford's actions were entirely reasonable, and therefore do not create a cause of action in favor of K.B. Ford used the minimal amount of control appropriate for the situation and did not apply handcuffs until it became clear that K.B. would not cease resisting and attempting to run away. As soon as K.B. calmed down, the handcuffs were removed and K.B. was returned to school. As such, Ford's actions were proper and cannot support a claim against him.

### A. Ford Did Not Unlawfully Seize K.B., And Plaintiff Does Not Have A Cause Of Action For "Custody" Under Count 1.

The framework for assessing the propriety of a seizure of a school child is found in *New Jersey v. T.L.O.,* 469 U.S. 325 (1985). While that case involved the reasonableness of a search, courts consistently rely on *T.L.O.* for guidance in assessing both searches and seizures with respect to a school student. The court there held:

> "[T]he accommodation of privacy interests of schoolchildren with the substantial need of teachers and administrators for freedom to maintain order in the schools does not require strict adherence to the requirement that searches be based on probable cause... Rather, the legality of a search of a student should depend simply on the reasonableness, under all the circumstances, of the search." 469 U.S. at 341.

The court continued: "Determining the reasonableness of any search involves a twofold inquiry: first, one must consider 'whether the ... action was justified at its inception' ...second, one must determine whether the search as actually conducted 'was reasonably related in scope to the circumstances which justified the interference in the first place.'" *Id.* (internal citation omitted).

This inquiry stated in *T.L.O.* applies to seizures as well as to searches. *E.g., Wofford v. Evans,* 390 F.3d 318 (4th Cir. 2004). "The facts of *T.L.O.* involved only a search. But the policies underlying that decision easily support its extension to seizures of students by school officials." *Id.* at 326.

Utilizing the principles in *T.L.O.*, the facts here show that Ford's actions were reasonable under the circumstances, and no constitutional violation has occurred. Under the first inquiry outlined in *T.L.O.*, it is apparent that Ford's actions were justified at the inception of his interaction with K.B. When K.B. continued to disrupt her class after all of the other students had calmed down, Ford, with the blessing of the assistant principal, asked K.B. to leave the classroom and express herself in the hall. It is important to note that at that time, there was not a seizure. Instead, the assistant principal followed Ford and K.B. into the hall and Ford respectfully asked K.B. to calm down. (Ebanks, pp. 7-8).

It was not until after K.B. continued to misbehave, attempted to run away, and swung her arms hitting Ford that Ford warned K.B. that he would have to place her in handcuffs if she did not stop. Despite this warning, K.B. did not calm down. Instead, she continued to try and get away from Ford. Only after K.B. continued her actions did Ford apply the handcuffs.

In this regard, it is important to bear in mind that it is the perception of the officer that is critical in assessing the reasonableness of a seizure. While K.B. did not expressly admit to "hitting" Ford, she did admit both to attempting to run away from Ford and to swinging her arms in an effort to get away and run from him. These actions understandably produced the perception in Ford of a safety threat. There was the threat to K.B.'s safety presented by her effort to run, and the threat to Ford's safety presented by K.B.'s continued effort to run away which included swinging her arms about as Ford attempted to control the situation. (Affidavit, paragraphs 11-18). Either perception justified action on Ford's part under the law.

This is important because K.B.'s actions not only created a danger to her own safety; they were criminal, consisting of an assault and battery of a police officer. *See Va. Code* § 18.2-57. A battery is defined as an unlawful touching of another, and it is not necessary that the touching result in injury. *Adams v. Com.*, 33 Va. App. 463, 469, 534 S.E.2d 347, 350 (2000). An assault is an overt act, or attempt, or unequivocal appearance of an attempt to do physical injury to the person of another, but does not require that the person be physically touched to be assaulted. *Zimmerman v. Com.*, 266 Va. 384, 387, 585 S.E.2d 538 (2003). In short, even without an admission by K.B. that she in fact hit Ford, her testimony does not negate that she assaulted him under applicable law, or that Ford perceived that he was hit. *See, e.g., Ware v. James City County, Virginia*, 652 F. Supp.2d 693, 710 (E.D. Va. 2009), *aff'd* 380 Fed. Appx. 274 (4th Cir. 2010) (unpublished) (plaintiff's actions at least created enough apprehension of bodily harm that officer felt he had to protect himself, justifying arrest).

Moreover, Ford's actions under the *T.L.O.* standard were also reasonable in scope under the circumstances. Ford briefly handcuffed K.B. and placed her in his air conditioned car until she was able to calm down. This occurred only after both Ford and K.B. were outside of the school. K.B. continued to try and run away, and the door to the hallway entrance had locked behind them. Once K.B. calmed down, Ford removed the handcuffs and walked K.B. back to the school to see her counselor. Ford's actions were entirely reasonable in scope under the circumstances. This is particularly true when the situation he was reacting to included actions that were criminal in nature.[3] *Wofford v. Evans, supra.*

---

[3] A child who commits an act designated as a crime under the law in the presence of an officer may be taken into immediate custody. *Va. Code* § 16.1-246. Assault on an officer is a felony under § 18.2-57(C). Even simple assault and battery (not on an officer) is a class 1 misdemeanor, § 18.2-57(A), and therefore a crime under the laws of Virginia. Here, Ford refrained from taking K.B. into custody, even though he had every right to do so under the circumstances.

9

In *Wofford*, a school child was questioned on two occasions after other students reported that she had brought a gun to school. On the second occasion, school officials called police, who interrogated the student in an assistant principal's office. Affirming the grant of summary judgment to the officers, the Fourth Circuit emphasized the possibility of criminal activity.

> "Law enforcement officers may depart from the procedural strictures of the Fourth Amendment when they reasonably conclude 'that criminal activity may be afoot'... Indeed, the constitutional standards governing police action in such circumstances match exactly those that regulate searches and seizures of students. *See T.L.O.* ... School Officials, unlike police, enjoy this discretion when addressing violations of school rules. ... But when a student is suspected of also breaching a criminal law, both school officials and law enforcement officers may proceed under the lesser standards of *Terry*[4]."

*Wofford v. Evans, supra,* 390 F.3d at 327 (some internal citations omitted).

Under *Terry* standards, an officer is authorized to take such steps as are reasonably necessary to protect the officer's safety and to maintain the status quo. *Foote v. Dunagan*, 33 F.3d 445, 448 (4th Cir. 1994). This includes the use of handcuffs. A brief complete deprivation of liberty, including the use of handcuffs, does not convert a stop into an unreasonable arrest so long as the methods of restraint used are reasonable to the circumstances. *Thomas v. Com.*, 16 Va. App. 851, 434 S.E.2d 319 323 (1993), *aff'd upon rehearing en banc*, 18 Va. App. 454, 444 S.E .2d 275 (1994) (collecting Fourth Circuit and other federal authority on the point).

Moreover, courts have specifically addressed the issue of handcuffing students. They have held that handcuffing a student is allowed where there is an issue of safety, although it is not allowed for the purpose of punishment. Here, there is no question that the handcuffing was done to control K.B.'s behavior, for her own protection and for the protection of Ford, and for no other reason. It certainly was not done for the purpose of punishment.

---

[4] *Terry v. Ohio*, 392 U.S. 1 (1968).

In *Samuels v. Independent School District 279*, 2003 WL 23109698 (D. Minn.), an officer was entitled to summary judgment, as well as qualified immunity, when he handcuffed a student on request of a school official, and removed the cuffs shortly thereafter. At the time, the student seemed tense and angry, and it was rare for a student to be brought to the officer. Moreover, the prompt removal showed that the actions were reasonable under the circumstances.

Handcuffing was also justified in *In Re Murray*, 136 N.C. App. 648, 525 S.E.2d 496 (2000). There, an officer handcuffed a student so a school official could search a bag. The handcuffing allowed the officer to control the situation while the official looked for contraband, which the official had been told might be in the student's possession.

The issue was also carefully considered in *Alexander v Bostic*, 458 F.3d 1295 (11th Cir. 2006). In *Alexander*, a student had threatened a teacher, which was overheard by a deputy. This justified the deputy's detaining of the student. The deputy later handcuffed the student. The court held that this act involved the second prong of the *T.L.O.* analysis, i.e. whether the handcuffing was reasonably related to the scope of the circumstances which justified the interference in the first place. Even though the handcuffing was not done to make an arrest, "during an investigatory stop, an officer can still handcuff a detainee when the officer reasonably believes that the detainee presents a potential threat to safety." 458 F.3d at 1305-06. In short, handcuffing a student is allowed to deal with a situation involving a threat to safety.

Ultimately, the *Alexander* court determined the handcuffing was not justified because at the time the handcuffing was done, the student was not a threat. In fact, the deputy expressly testified he handcuffed the student for the purpose of ridding the student of a disrespectful attitude and to

impress on her the serious nature of committing crimes. That amounted to an attempt to punish and to change her future behavior, instead of preventing a potential threat.[5]

The case law, including the analysis in *Alexander*, supports Ford's position. He was not attempting to punish K.B. in any way, nor did he handcuff a passive, undisruptive student. Instead, the opposite was true. As such, his actions were reasonable under the circumstances, and K.B. did not suffer a constitutional violation. Accordingly, Ford is entitled to summary judgment on Count 1 of K.B.'s Complaint.

**B.     Ford Did Not Use Excessive Force And Count 2 Should Be Dismissed.**

An excessive force claim is properly analyzed under an objective reasonableness standard. *Graham v. Conner*, 490 U.S. 386 (1989). *See also, Abney v. Coe*, 493 F.3d 412 (4th Cir. 2007). The question is whether the officer's actions are objectively reasonable "[I]n light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397. **This reasonableness should not be viewed in hindsight, but rather from the perspective of a reasonable officer on the scene. Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment.** *Id.* at 396.

Here, the force used was the opposite of excessive; it was the slightest amount that served to control and defuse the situation presented on the scene. K.B. suffered no injury, and the handcuffing was very brief. In this connection, "[S]everal courts have found that where there were no physical injuries caused by the application of force, there cannot be a claim for excessive use of force." *Drake v. Higgins*, 1999 WL 462987 (W.D. Va.)(collecting cases). As such, no constitutional violation occurred, and Ford is entitled to summary judgment.

---

[5] Similarly, handcuffing was not appropriate where a student merely passively sat down and lowered his head, but was not unruly or disruptive and was in an enclosed area surrounded by adults. *C.B. v. Sonora School District*, 691 F. Supp.2d 1170 (C.D. Cal. 2010).

12

### C. Ford Is Entitled To Qualified Immunity.

The Supreme Court has outlined the two-pronged inquiry that governs qualified immunity. Under the first prong, the court considers whether the facts, viewed in the light most favorable to the plaintiff, make out a violation of a constitutional right. If they do, the second prong considers whether the constitutional right in question was "clearly established" at the time of the defendants' alleged violation. *Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 815-16 (2009). It is within the Court's discretion to determine which prong of the test to address first. *Hunsberger v. Wood*, 570 F.3d 546 (4th Cir. 2009). Here, because the facts establish that Ford did not violate a constitutional right, the qualified immunity analysis should end, and he is entitled to summary judgment. Even if, however, this Court determined that a question existed with respect to whether a constitutional right was violated, Ford is still entitled to qualified immunity.

A clearly established right is not discussed in a generalized fashion, but instead must be defined at a high level of particularity. *Wilson*, 337 F.3d at 403. Accordingly, the issue is whether it was clearly established that a reasonable officer would have known that he could not handcuff a disruptive school child who would not calm down, but instead was attempting to run away from that officer while physically resisting his efforts to calm her down after leaving the school building, in order to ensure her safety and the safety of the officer until the student calmed down.

There is a significant overlap between Fourth Amendment analysis and qualified immunity inquiry in that both are ultimately concerned with reasonableness. *Hunsberger v. Wood, supra*, 570 F.3d at 557. Accordingly, the entire reasonableness analysis set forth above will not be repeated here. It is important to note, however, that an officer's actions only violate a clearly established constitutional right if "in the light of pre-existing law, the unlawfulness of the action is apparent." *Johnson v. Caudill*, 475 F.3d 645, 650 (4th Cir. 2007).

Moreover, objective reasonableness is based on what a reasonable officer would have done, which is evaluated "[B]y the pragmatic considerations of the moment and not by those that can be hypothesized from an armchair." *Sigman v. Town of Chapel Hill*, 161 F.3d 782, 787 (4th Cir. 1998) (holding that witness affidavits did not create an issue of material fact concerning the perceptions of the officers at the time of the incident). If the legality of a particular course of action is open to reasonable dispute, the officer is not liable. *Wilson v Kittoe*, 337 F.3d 392, 403 (4th Cir. 2003). The facts must be filtered through the lens of the officer's perceptions at the time of the incident in question. *Milsted v. Kibler*, 243 F.3d 157, 163 (4th Cir. 2001). This limits the need for decision makers to sort through conflicting versions of the "actual" facts and allows them to focus instead on what the police officer reasonably perceived. *Id.*

Here, Ford is particularly deserving of immunity at the least, since a failure to act on his part might have led to K.B. running away and suffering harm as a result. *See, Gooden v. Howard County, Maryland*, 954 F.2d 960 (4th Cir. 1992) (immunity particularly important where inaction could be faulted).

As developed above, the case law on use of handcuffs in a school setting allows such use to provide safety and control situations, but denies such use as a tool for punishment or on a passive, inert student. Therefore, a reasonable officer would have no basis to believe he would be deliberately violating the constitutional rights of a student who is disruptive, combative and attempting to run off by applying handcuffs. To the contrary, a reasonable officer would believe that such conduct was completely proper. The same is equally true with respect to K.B.'s excessive force claim.

Accordingly, even to the extent this Court questioned whether K.B.'s constitutional rights may have been violated, Ford is still entitled to qualified immunity. As developed above, Ford

14

cannot be liable for a bad guess in a gray area, but only if he deliberately crossed a bright line. Since Ford acted reasonably by any measure, he is at least entitled to qualified immunity here.

### D. Plaintiff Does Not Have A Claim For Assault.

Under Virginia law, an assault is defined as "an attempt or offer, with force and violence, to do bodily hurt to another. Whether from wantonness or malice, by means calculated to produce the end if carried into execution." *Harper v. Commonwealth*, 196 Va. 723, 733, 85 S.E.2d 249 (1955). Plaintiff is required to prove both a "wrongful act" and resultant physical injury. *Pike v. Eubank*, 197 Va. 692, 90 S.E.2d 821, 827 (1956). For an act to be wrongful, it must lack excuse or justification. *Id.*; *McLenagan v. Karnes*, 27 F.3d 1002, 1009 (4th Cir. 1994).

A claim that a person was "assaulted" by being handcuffed cannot be established where an officer's actions are legally justified. *Etherton v. Doe*, 268 Va. 209, 597 S.E.2d 87 (2004); *Parker v. McCoy*, 212 Va. 808, 188 S.E.2d 222 (1992). Accordingly, as established above, because Ford's conduct was justified, this claim should be dismissed. *McLenagan*, 27 F.3d at 1009; *Corbin v. Woolums*, 2008 WL 5049912, *9 (E.D. Va. Nov. 25, 2008) (where handcuffing for the purpose of restraint is legally justified, no wrongful act has occurred); *Swann v. City of Richmond*, 498 F. Supp.2d 847, 874 (E.D. Va. 2007) (holding that assault and battery claims were subject to summary judgment where the officer's actions were objectively reasonable).

### E. Plaintiff Does Not Have A Claim For False Imprisonment.

False imprisonment is the restraint of one's liberty without sufficient cause or "adequate legal justification." *Jordan v. Shands*, 255 Va. 492, 497 (1998); *Douglas v. Sanok*, 2006 WL 2927780 at * 12 (W.D. Va.), *citing Zayre of Va. v. Gowdy*, 207 Va. 47, 147 S.E.2d 710 (1966). Thus, a person cannot be falsely imprisoned upon a lawful exercise of authority. *Yeatts v. Minton*, 211 Va. 402, 406, 177 S.E.2d 646 (1970).

As discussed above, K.B. was briefly detained for her safety and Ford's safety, without arrest. That action was justified and reasonable under the circumstances, and Ford is entitled to summary judgment.

### F. Ford Is Entitled to Good Faith Immunity.

K.B.'s intentional tort claims under Virginia law should also be dismissed pursuant to the Good Faith Immunity doctrine. Under Virginia law, "good faith" immunity provides absolute immunity from civil liability where a public servant acts in good faith when exercising his duties in the law enforcement context. In *DeChene v. Smallwood*, 226 Va. 475, 311 S.E.2d 749 (1984), the Supreme Court of Virginia reversed a civil judgment against a police officer, who in good faith arrested someone involved in an accident who would not pay a towing fee. The court held that an officer who in good faith believed that his actions were factually and legally sound was entitled to absolute "good faith" immunity from a civil suit, even if his arrest proved to be unlawful. *Id.*, at 480-81, 311 S.E.2d at 751-52.

This is consistent with other decisions holding public employees absolutely immune from liability when acting in good faith. *See, e.g., Harlow v. Clatterbuck*, 230 Va. 490, 339 S.E.2d 181 (1986) (reversing judgment against correctional employees who in good faith released someone who later committed a crime). "When acting in good faith, the courts will afford [police officers] the utmost protection, and they will recognize the fact that emergencies arise when they are not expected to exercise that cool and deliberate judgment which courts and juries exercise afterwards upon investigations in court." *Davidson v. Allam*, 143 Va. 367, 373, 130 S.E. 245, 246 (1925). As the Court stated in *Pike v. Eubank*, 197 Va. at 703-04, 90 S.E.2d at 829:

> I think we should remember the principle that officers of the law, when engaged in a lawful duty which they are performing in a lawful manner, are entitled to the protection of the law that they seek to enforce ... **[T]hen the law throws around him every protection to which he is entitled as a minister of justice.**

16

The undisputed facts establish that Ford acted in good faith under the circumstances of this case. Thus, Ford is entitled to summary judgment on Counts 3 and 4 of plaintiff's Complaint for assault and false imprisonment.

## VI. CONCLUSION

For the reasons set forth herein, Ford should be granted summary judgment, and K.B.'s Complaint should be dismissed with prejudice in its entirety.

**HAROLD FORD**

By Counsel

/s/
David P. Corrigan
VSB No. 26341
Attorney for Harold Ford
Harman, Claytor, Corrigan & Wellman
P.O. Box 70280
Richmond, Virginia 23255
(804) 747-5200
(804) 747-6085 – facsimile
dcorrigan@hccw.com

## CERTIFICATE

I hereby certify that on the 8th day of June, 2011, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Robert H. Smallenberg, Esq.
Metropolitan Law Center, PLC
10035 Sliding Hill Road, Suite 204
Ashland, VA 23005

Brian K. Telfair, Esq.
City of Richmond
Office of the City Attorney
900 E. Broad Street, Room 300
Richmond, VA 23219

/s/ _____
David P. Corrigan
VSB No. 26341
Attorney for Harold Ford
Harman, Claytor, Corrigan & Wellman
P.O. Box 70280
Richmond, Virginia 23255
(804) 747-5200
(804) 747-6085 – facsimile
dcorrigan@hccw.com